Steven Cohen
10139 Donald Weese Court
Las Vegas, NV 89129
(732) 567-4048 (cell) | (702) 818-5120 (home/fax)
Steven.Cohen@Alumni.UNLV.edu
Pro Se

|  |  |
|---|---|
| STEVEN COHEN | Case No.: 2-19-CV-01033-APG-EJY |
| Petitioner, | |
| vs. | PETITIONER'S OPPOSITION TO RESPONDENTS' DHRM AND DETR-BVR'S MOTION TO DIMISS |
| STATE OF NEVADA | PETITIONER'S COUNTER-MOTION FOR LEAVE TO AMEND |
| DEPARTMENT OF HEALTH AND HUMAN | PETITIONER'S COUNTER-MOTION FOR AN ORDER TO SHOW CAUSE AND HEARING AS TO WHY WRIT RELIEF SHOULD NOT ISSUE, OR, IN THE ALTERNATIVE, RECONSIDERATION OF DISMISSAL OF THE WRITS |
| SERVICES, DIVISION OF HEALTH CARE, | |
| FINANCING, AND POLICY, | |
| DEPARTMENT OF ADMINISTRATION, | |
| DIVISION OF HUMAN RESOURCE | ORAL ARGUMENT/HEARING REQUESTED |
| MANAGEMENT, | |
| AND | |
| DEPARTMENT OF EMPLOYMENT, | |
| TRAINING, AND REHABILITATION, | |
| BUREAU OF VOCATIONAL | |
| REHABILITATION | |
| Respondents | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

**Statement of Opposition and Counter-Motions**

Petitioner opposes Respondents' Division of Human Resource Management (hereinafter "DHRM" or "State HR") and the Department of Employment, Training, and Rehabilitation, Bureau of Vocational Rehabilitation (hereinafter "DETR", "BVR," or "the Bureau") Motion to Dismiss on several grounds, most notably meeting the Federal definition of disability, as well as the adoption by reference of Federal law concerning employment opportunities for people with disabilities into State HR law.  Once properly served, if they have not already been, Petitioner would oppose any similarly filed motion from the Department of Health and Human Services, Division of Health Care, Financing, and Policy (hereinafter "DHHS," "the Division," "the Department," or "Medicaid") for similar or identical reasons as are set forth below.

Petitioner counter-motions for leave to amend the Fourth Amended Complaint to cure the lacking signature, correct a factual date, and account for subsequent information that has occurred since the original Fourth Amended filing through rewording or deletion, which does not change the underlying allegations.

Lastly, Petitioner further counter-motions for an Order to Show Cause and hearing before the Court as to why writ relief should not have issued in the first instance, or, in the alternative, reconsideration of the dismissal of the writs, based upon new information which explains why no other remedy existed regarding the underlying Title I claim.

**Statement of Facts In Support of Opposition**

First, upon further review, Petitioner apologizes to the Court for not signing the Fourth Amended Complaint. This was merely an oversight, in attempting to resolve the matter with finality before the Parks Department job began. As discussed more thoroughly in the Points and Authorities section, Petitioner seeks leave to amend the Fourth Amended Complaint to cure the signature, correct a factual date (which does not otherwise change the underlying allegation), and account for subsequent information that has occurred since the original Fourth Amended filing through non-substantive rewording or deletion.

For example, anything which would have applied to the Parks Department would now apply either to the Division, or to any subsequent State agency to which Petitioner may be appointed, whether through competitive or noncompetitive means. This mistake was cured promptly once it was brought to Petitioner's attention, and, at worst, the Court's remedy to correct its occurrence in the future might be a nominal sanction against the monetary damages that are sought by Petitioner. Further, if the Court wished to construe this claim by Respondents in that very fashion, as discussed more thoroughly in the Points and Authorities section, it would have been needed to have been brought separately from any other motion.

Next, Respondents' claim of non-coverage under Title I fails. While each person with an autism spectrum disorder can manifest differently, the major commonality which applies to most, if not all, persons with the diagnosis, is a deficiency in communication. As such, as discussed more thoroughly in the Points and Authorities section, the Federal definitions of both disability and major life activity have been met.

Further, Respondents' only valid defense to the underlying Title I claim is one of undue hardship. As discussed more thoroughly in the Points and Authorities section, by not raising its only valid defense to the underlying Title I claim, any future attempt to do so should be waived. Once Petitioner disclosed his diagnosis to his Medicaid supervisor on the morning of October 29th, 2018, which was subsequently confirmed by a provider of health care licensed in this State on December 18th, 2018, the State had a good faith basis to complete an interactive process to find solutions (hereinafter "reasonable accommodations") which would meet both Petitioner's needs, as well as the State's. Contrary to a commonly held belief, the sole purpose of reasonable accommodations is to level the playing field between employees with disabilities and those without.

1          As discussed more thoroughly in the Points and Authorities section, in order for the Court to grant a Motion

2   to Dismiss as to the underlying Title I claim, the Court would need to find either that Petitioner was not a person

3   with a disability within the meaning of presently written Federal law, and/or that the State would experience an

4   undue hardship by permitting Petitioner to utilize a tape recorder, or, more modernly, a technological application

5   which provides similar functionalities, such as the ability to take notes of what occurred at a departmental meeting,

6   which was an essential function of his Medicaid job.  Petitioner already had (Emphasis added) such technological

7   applications on his cell phone, as he utilized them for the same purpose during college, except that the "what

8   occurred" environment in college is a class, rather than a departmental meeting.  As such, the State's cost to

9   implement this accommodation would have been $0.00 (Emphasis added).

10          Further, in its Order dated September 8th, 2020, the Court has already found that the now-defunct Second

11   Amended Complaint could proceed, as liberally construed.  The major difference between the Second and Fifth

12   Amended Complaints is the setting forth of additional conduct committed by the State, through its agencies, and

13   laying the totality of the conduct out in a more cogent fashion, so as to assist the Court.  As any new conduct which

14   may not have been cogently articulated in the now-defunct Second Amended Complaint directly relates to the pre-

15   vention of the underlying Title I conduct, the Fifth Amended Complaint should clearly survive a relatedness analysis

16   to the original Complaint, dated June 17th, 2019.

17          Further, Respondents' claim of qualified immunity fails.  In adopting by reference and referring to the ADA

18   Amendments Act of 2008, the State understands that it is a covered employer, and, thus, subject to liability for

19   improper conduct.  Further, Respondents are engaged in an industry affecting commerce, and have 15 or more

20   employees.  In this regard, the commerce is the provision of health care, vocational rehabilitation, or personnel

21   services, for which either direct payment to an employee for time worked, or a contractual agreement to pay a

22   vendor who assisted in the provision of services, but whereby the vendor stood as the agency's agent, and was

23   required to report to the agency on its activities provided in order to receive such payment, exists.  Lastly, the

24   definition of employer specifically excludes the Federal Government, but does not specifically exclude State

25   governments.  Lastly, as discussed more thoroughly below in the Points and Authorities section, the definition of

26   person remained intact to include the State and its political subdivisions (Emphasis added) when the overall

27   administrative procedure governing these types of complaints was amended statutorily during the 2019 Legislative

28   Session.

1      Further, Respondents' claim concerning lack of administrative remedy exhaustion fails. In the absence of

2  being able to refer back to the now-defunct Second Amended Complaint, Petitioner has re-attached to the Fifth

3  Amended Complaint a certified copy of the EEOC's record, including the Right-to-Sue Letter. In addition,

4  Petitioner has attached the essential functions of the Medicaid job, its work performance standards and performance

5  evaluations, and both pre-August 7th, 2018 and post-August 7th, 2018 communications concerning the issues in

6  dispute, as exhibits to this Opposition and Counter-Motion. In addition, as part of the injunctive relief sought

7  against the Bureau is an effective communication reasonable accommodation, so that the Bureau may effectively

8  provide services in furtherance of obtaining and/or maintaining employment, and Petitioner already pursued the

9  required administrative remedies concerning the underlying Title I conduct, forcing Petitioner to seek administrative

10  remedies twice, when the Bureau's alleged conduct causally connects to the prevention of the Division's underlying

11  Title I conduct, would be futile.

12      Next, because this case ultimately presents a Federal civil rights question of law, and the State's District

13  Court and this Court have competent jurisdiction, Petitioner should be afforded a choice of venue between State and

14  Federal Court. Further, under the liberal construction doctrine granted to pro se litigants, the title of the pleading

15  should not control, when evaluating its overall content. This Complaint was primarily brought in response to the

16  Equal Employment Opportunity Commission's (hereinafter "EEOC") Right-to-Sue Letter. Additionally, most of the

17  injunctive and writ relief sought by Petitioner is for the Bureau, State HR, and Division to merely comply with its

18  mandatory duties that are proscribed by both Federal and State law, as well as controlling legal precedent.

19      Further, Respondents' claim of mootness fails. When tracking damages, Petitioner has already taken into

20  account amounts paid for the 5 weeks he was employed by the Parks Department, and he will continue to do so for

21  the Public Employee Retirement System (hereinafter "PERS") refund he expects to disburse on or about October

22  15th, 2020. For that timeframe, Petitioner only seeks the difference between what he would have been paid through

23  continued employment without interruption (hereinafter "a break in service") and what he was actually paid.

24  Further, in the absence of timely filed performance reports from the January 2019 through present evaluation

25  periods, as discussed more thoroughly in the Points and Authorities section, the remedy sought, merit pay increases

26  (hereinafter "step increases") which cover the timeframe from January 3rd, 2019 until this matter is resolved, is

27  already provided for by statute.

28

1    Next, as discussed more thoroughly below in the Points and Authorities section, the Medicaid job central to

2  this case was being supported in part by the State, as the Bureau had to certify to State HR as an initial step that

3  Petitioner could meet the minimum qualifications for the Administrative Assistant II job classification specifications

4  (hereinafter "class specs"). Further, if the Division found that it could not reasonably accommodate Petitioner, as

5  discussed more thoroughly below in the Points and Authorities section, State HR had a duty to assist the Division in

6  finding a job within either the Division or State service as a whole, which is at or, after substantial      finding of

7  non-existence, below, Petitioner's initial grade (hereinafter "rate of pay"), for which Petitioner could fully perform

8  the essential functions, with or without reasonable accommodations.

9    Lastly, having provided the Court with additional factual information in this Opposition and

10  Counter-Motion, such that the requested writ would have issued in the first instance, and in light of Petitioner's

11  counter-motion, which alternatively requests reconsideration of its dismissal, Petitioner takes no formal position as

12  to Respondents' res judicata claim, having sufficiently defeated their underlying Motion to Dismiss on other

13  grounds.

14    **Statement of Facts In Support of Writ Relief and/or Order to Show Cause and Hearing Why Relief**

15  **Should Not Issue, or, In the Alternative, Reconsideration of the Dismissal of the Writs**

16    As is discussed more thoroughly in the Points and Authorities section, seeing as how no available plain,

17  speedy, or adequate form of relief existed for Petitioner at the time the underlying termination conduct occurred, and

18  the same statutory deficiencies remain in effect to present day, the granting of writ relief, or an Order to Show Cause

19  and hearing before the Court to resolve why said writ should not have issued in the first instance, is within the

20  Court's discretion.

21    As is discussed more thoroughly below, the statutory challenge is that the Division has been specifically

22  excluded from judicial review, and none of the enumerated exceptions therein cover civil rights/discrimination

23  issues. Further, any exclusion clause is contrary to the stated public policy position of the present Gubernatorial

24  Administration, as it relates to civil rights/discrimination issues, as well as the foundation of the principle of judicial

25  review.

26

27

28

1

2     **Memorandums of Points and Authorities**

3        Federal Rule of Civil Procedure (hereinafter "FRCP") 11 (a) states as follows: "…The court must strike an

4 unsigned paper unless the omission is promptly corrected after being called to the attorney or party's attention."

5 Due to time considerations contemplated by FRCP 15, while awaiting the Court's formal leave to do so, the Fifth

6 Amended Complaint, which was signed, was filed and served on Respondents via the Court's electronic filing

7 system the day after the Motion to Dismiss was served upon Petitioner via the same means, thus meeting the Rule's

8 required definition of "promptly corrected."

9        FRCP 11 (c) (2) states, "A motion for sanctions must be made separately from any other motion… The

10 motion … must not be filed or be presented to the court if the challenged paper … is … appropriately corrected

11 within 21 days after service…"  In sum, as Petitioner has already corrected the specific conduct which is alleged to

12 violate FRCP 11 (b), Respondents' motion to strike is now moot, or, in the alternative, was not filed separately from

13 any other motion, and, thus, should not be considered until properly filed.

14        FRCP 15 (a) (1) (B) states, "A party may amend its pleading once as a matter of course within: …21 days

15 after service of a motion under Rule 12 (b), (e), or (f), whichever is earlier."

16        FRCP 15 (a) (2) states, "In all other cases, a party may amend its pleading only with the opposing party's

17 written consent or the court's leave.  The court should freely give leave when justice so requires."

18        In *Haines v. Kerner*, 404 U.S. 519 (1972), the U.S. Supreme Court upheld the Court's discretion to evaluate

19 special circumstances related to papers filed by pro se litigants, notably the liberal construction doctrine, and

20 remanded the case for *Haines* to be able to present evidence of his claims before entertaining dismissal.  Stated

21 another way, with the additional information being provided through this Opposition and Counter-Motion, as to

22 subjects which had already been first raised in the Complaint, a reasonably prudent person could construe the fact

23 pattern alleged in this case to be one upon which Petitioner may be entitled to monetary and/or injunctive relief.

24        Pursuant to Section 2 (a) (1) of U.S. Senate Bill (hereinafter S.) 3406 (hereinafter the Federal Legislative

25 bill which became the ADA Amendments Act of 2008), Congress [found] that "in enacting the [original ADA of

26 1990], Congress intended that the Act provide a clear and comprehensive mandate for the elimination of

27 discrimination against individuals with disabilities, and provide broad coverage…" This was further renewed in

28 Section 2 (b) (1), which stated that the purposes of this Act are "to carry out the ADA's objectives of providing … by

reinstating a broad scope of protection to be available."

1    Pursuant to Section 2 (b) (5) of the Federal Legislative bill which became the ADA Amendments Act of

2   2008, Congress further stated, "[T]o convey c [sic]ongressional intent that the standard created by the Supreme

3   Court in the case of *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002) for substantially

4   limits...has created an inappropriately high level of limitation necessary to obtain coverage... that it is the intent of

5   Congress that the primary object of attention in cases brought under the ADA should be whether entities covered

6   under the ADA have complied with their obligations, and to convey that the question of whether an individual's

7   impairment is a disability under the ADA should not demand extensive analysis..."  The underlying questions in this

8   case are whether the State, through its agencies, complied with its Federal and State obligations concerning equal

9   employment and service provision/program design.

10    Pursuant to Title 42, Chapter 126, Section 12102 (1) (A) of the United States Code (hereinafter "the Title I

11   of the Americans with Disabilities Amendments Act (ADAAA) definition of disability), "...The term ['disability']

12   means, with respect to an individual, "A physical or mental impairment that substantially limits one or more major

13   life activities of such individual."

14    Pursuant to Title 42, Chapter 126, Section 12102 (2) (A) of the Title I of the ADAAA definition of major

15   life activities, "...For purposes of paragraph (1), major life activities include, but are not limited to, ...thinking,

16   communicating, and working."

17    Pursuant to Section 12111 (5) (A) of Title I of the ADAAA, "The term ["e]mployer["] means a person

18   engaged in an industry affecting commerce who has 15 or more employees..., and any agent of such person...". For

19   purpose of Petitioner's analysis, the words "employer" and "covered entity," as they appear throughout the statute,

20   are intended to be used interchangeably.

21    Pursuant to Section 12111 (5) (B) (i) of Title I of the ADAA, "The term ["e]mployer["] does not include the

22   United States..."

23    Pursuant to Nevada Revised Statutes (hereinafter "NRS") 613.310 (6), ["Person"] includes the State of

24   Nevada and any of its political subdivisions."

25    Pursuant to Section 12112 (a) of Title I of the ADAAA, "No covered entity shall discriminate against a

26   qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or

27   discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of

28   employment."

1       Pursuant to Section 12112 (5) (A) of Title I of the ADAAA, discriminate includes "not making reasonable

2    accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability

3    who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose

4    an undue hardship on the operation of the business of such covered entity…"

5       Pursuant to Nevada Administrative Code (hereinafter "NAC") 284.120 (1) (b), "For the purposes of

6    determining the meaning of …, [DHRM] hereby adopts by reference and will refer to: The ADA Amendments Act

7    of 2008 ([PL] 110-325)."

8       Pursuant to NRS 34.170, "This writ shall be issued in all cases where there is not a plain, speedy, and

9    adequate remedy in the ordinary course of law.  It shall be issued upon affidavit, on the application of the party

10    beneficially interested."

11       Pursuant to NRS 34.180, "…the writ of mandamus may, in the discretion of the court or judge issuing the

12    writ, be made returnable and a hearing thereon be had at any time."

13       Pursuant to NRS 233.039 (1) (h), "The following agencies are entirely exempted from the requirements of

14    this chapter: …Except as otherwise provided in NRS 422.390, the Division of Health Care Financing and Policy of

15    [DHHS]."  As none of the enumerated exceptions in NRS 422.390 concern employment civil rights/discrimination

16    issues, but, rather, payment matters, this is why no plain, speedy, and adequate remedy existed to resolve the

17    underlying Title I claim.  The concept of judicial review was founded in *Marbury v. Madison*, 5 U.S. 137 (1803),

18    under similar circumstances to those which exist in this case.  Thus, as it goes against long-standing precedent, this

19    Court should declare the entire exemption section to be unconstitutional, or, in the alternative, interpret it in such a

20    way which provides for an employment civil rights/discrimination exception.

21       Pursuant to 2019 Executive Order 1, available at https://Gov.NV.gov/News/Executive_Orders/2019/Execu-

22    tive_Order_2019-01_Order_Establishing_the_Governor%E2%80%99s_Task_Force_On_Sexual_Harassmen-

23    t_And_Discrimination_Law_And_Policy/, it continues to be the position of the present Gubernatorial

24    Administration that "…the State of Nevada is committed to promoting a culture that values respect, opportunity,

25    inclusion, and diversity, free from … discrimination;" and "it is imperative to the progress and reputation of Nevada

26    that we continue to examine and address the … discrimination reporting failures, and flaws in anti-discrimination

27    laws… that have allowed … and discrimination to persist."

28

1    While its specific language content is presently confidential until a date in the Legislative Session

2  preparation process on or about either November 3rd, 2020 or January 4th, 2021, the Attorney General's Office has

3  pre-filed Bill Draft Request (hereinafter "BDR") 414, available at https://www.Leg.State.NV.US/App/NELIS/REL/

4  81st2021/Bdrs/List, which presumably results from the work of the Task Force which is referenced in the above

5  Executive Order.  Other BDR's, most notably 243, filed by State HR, and 216, filed by Senator Dallas Harris, have

6  been filed with the intent of addressing this same subject.  As the subject has already been raised as a concern by

7  multiple parties, any one of the BDR's could very easily support an amendment proposed by Petitioner, which

8  specifically addresses disability discrimination.  As such, Respondents' response in this case, which would

9  effectively permit discrimination to occur, is perplexing.

10    Pursuant to NRS 284.012, "Subject to other applicable provisions of this chapter, it is the policy of this

11  State that persons with disabilities must be afforded equal opportunities in employment by the State…, and in all

12  other employment supported in whole or in part by the State."    While Nevada is an at-will employment state, in

13  *Vancheri v. GNLV Corporation*, 105 Nev. 417, the Nevada Supreme Court held, "…An employer can dismiss an

14  at-will employee with or without cause, so long as the dismissal does not offend a public policy of this state."

15  Further, on pages 1-2 of its April 2016 report on employment issues, available at

16  https://www.Leg.State.NV.US/Division/Research/Publications/PandPReport/02-LE.pdf, the State's non-partisan

17  Legislative Counsel Bureau's (hereinafter "LCB") Research Division provided discrimination as an example of a

18  public policy which may not be violated when making employment decisions.

19    Pursuant to NRS 284.290 (2), "Dismissals or demotions may be made at any time during the probationary

20  period in accordance with regulations adopted by the Commission."  While not dispositive, nor set forth as a

21  contract, page 41 of the State's Employee Handbook, available at http://HR.NV.gov/uploadedFiles/hrnvgov/Content/

22  Resources/Publications/Employee_Handbook.pdf, interprets the carve-out provision of the statute as follows:

23  "New hires serving a probationary period and who have not attained permanent status in a class may be terminated

24  at any time for any legal (Emphasis added) reason."  Per the Federal definitions of disability and major life activity

25  that were previously provided, terminating a probationary employee, without fully engaging in the interactive

26  process concerning reasonable accommodations in good faith, to find solutions which met both the employee and

27  employer's needs, is not (Emphasis added) legal.

28

1    The Fourteenth Amendment to the U.S. Constitution commands that no state shall deprive any person of
2  life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal
3  protection of the laws. See e.g. *State ex rel. List v. County of Douglas*, 90 Nev. 272, 279 (Nev. 1974). … Due
4  process requires a state to give an opportunity to be in heard in a meaningful manner and at a meaningful time.
5  *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970). The property right at issue in this case is that of continued
6  employment/economic independence.

7    Over time, the U.S. Supreme Court has consistently held in favor of equal protection in contexts such as
8  education, marriage, and, most recently and relevant to these facts, diversity in employment. *Brown v. Board of*
9  *Education*, 347 U.S. 483 (1954), *Obergefell v. Hodges*, 576 U.S. 644 (2015), and *Bostock v. Clayton County*, 590
10  U.S. ____ (2020). Further, both the U.S. Supreme Court, as well as another trial Court within this Circuit, have
11  either upheld or approved settlement regarding the right to full participation/integration for people with disabilities,
12  in the contexts of both independent/community living and employment. *Olmstead v. L.C.*, 527 U.S. 581 (1999) and
13  *Lane v. Brown*, 166 F. Supp. 3d 1180 (2015).

14    Pursuant to NRS 284.340 (2), "Each appointing authority shall: …File reports with the Administrator on
15  the performance, during the probationary period, of each of the employees of the appointing authority who holds a
16  position in the classified service. A report must be filed …at the end of the 3rd, 7th, and 11th months of
17  employment if the probationary period is 12 months."

18    Pursuant to NRS 284.340 (3), "File a report annually with the Administrator on the performance of each…
19  and has attained permanent status. The report must be filed at the end of the 12th month next following the
20  attainment of permanent status…If the report is not filed on or before the required date, the performance of the
21  employee shall be deemed to be standard."

22    Pursuant to NAC 284.470 (5), "If a report on performance is not filed on or before the times specified in
23  NRS 284.340, the performance of the employee (Emphasis added) shall be deemed to be standard for the purpose of
24  determining the salary of the employee and the employee (Emphasis added) will receive a merit pay increase if he or
25  she is otherwise eligible for the increase pursuant to NAC 284.194…"

26
27
28

1    Pursuant to NAC 284.470 (5) (a), "…If an untimely report on performance [is] filed thereafter, the

2 employee's record of employment will be updated to reflect the overall rating of performance of the employee as

3 reported, but that rating will not affect any merit pay increase to which the employee is otherwise entitled."

4    Pursuant to NAC 284.470 (5) (b), "…[is] not filed thereafter, the employee's record of employment will not

5 include an overall rating of performance for that period of evaluation."

6    Pursuant to NAC 284.194 (1), "An employee whose last rating of performance was standard or better and

7 who has not attained the top step of his or her grade must receive a merit pay increase of one step on his or her pay

8 progression date.  Unless the employee receives a subsequent rating of performance that is substandard, an

9 employee will receive a merit pay increase of one step for each additional year of employment equivalent to full-

10 time service until he or she reaches the top step of the grade."  Stated another way, by having returned to State

11 service, albeit briefly, but not having achieved permanent status with the Division, Petitioner has thus far lost two

12 steps' worth of pay while this matter has been pending, as well as his original pay progression date of February 12th

13 of each year.

14    Pursuant to NRS 284.385 (1), "An appointing authority may: Dismiss or demote any permanent (Emphasis

15 added) classified employee…"

16    Pursuant to NRS 284.385 (2), "Before a permanent (Emphasis added) classified employee is dismissed…"

17    Pursuant to NRS 284.385 (4), "No employee (Emphasis added) in the classified service may be dismissed

18 for any reason relating to his or her religion, race, sexual orientation, or gender identity or expression (Emphasis

19 added)."  Once again, based upon a plain language reading of the statute presently in effect, the right to due process

20 of Petitioner, falling into a protected class which is not specifically promulgated within the dismissal statute, is

21 affected.

22    Pursuant to NAC 284.405 (1), "[DHRM] shall assist an appointing authority [(hereinafter "agency")] with

23 the reassignment of an employee with a disability who is unable to perform the essential functions of his or her

24 position with or without reasonable accommodation by identifying any vacant or soon to be vacant positions for

25 which the employee meets the minimum qualifications…"

26

27

28

1    Pursuant to NAC 284.405 (2), "The appointing authority of the employee shall, through the interactive

2    process, determine if a vacant or soon to be vacant position at the employee's current grade exists within the

3    employee's agency.  If such a position is identified, …the appointing authority shall offer the employee the position

4    unless the appointing authority demonstrates that such an appointment would cause an undue hardship…"

5    Pursuant to NAC 284.405 (3), "If the appointing authority of the employee is not able to reassign the

6    employee pursuant to subsection 2, the appointing authority shall notify the [DHRM].  For at least 30 days after

7    receipt of the notification, [DHRM] shall place the employee on reassignment lists for any vacant or soon to be

8    vacant positions being filled at the grade of the current position of the employee if the employee meets the minimum

9    qualifications for the positions… If such a position is determined to be available … the employee must be offered

10   the position unless it is demonstrated…"

11   Pursuant to NAC 284.405 (11), "The provisions of this section do not prohibit an employee from accepting

12   another position through a competitive or noncompetitive appointment."

13   Pursuant to Title 34, Section 361.56 (a) of the Code of Federal Regulations (hereinafter "the employment

14   outcome closure provision of Federal Vocational Rehabilitation [hereinafter "VR"] law"), "The record of services of

15   an individual who has achieved an employment outcome may be closed only if all of the following requirements are

16   met: …The individual has achieved the employment outcome that is described in accordance with Section 361.46

17   (a) (1) and is consistent with the individual's unique strengths, resources, priorities, concerns, abilities, capabilities,

18   interests, and informed choice."

19   Pursuant to Title 34, Section 361.56 (b) of the employment outcome closure provision of Federal VR law,

20   "…The individual has maintained the employment outcome for an appropriate period of time, but not less

21   than 90 days, necessary to ensure the stability of the employment outcome, and the individual no longer needs (VR)

22   services."

23   Pursuant to Title 34, Section 361.56 (c) of the employment outcome closure provision of Federal VR law,

24   "…At the end of the appropriate period under paragraph (b) of this section, the individual and the qualified (VRC)

25   employed by the designated State unit consider the employment outcome to be satisfactory and agree that the

26   individual is performing well in the employment."

27

28

1       Pursuant to Title 34, Section 361.56 (d) of the employment outcome closure provision of Federal VR law,

2   "…The individual is informed through appropriate modes of communication of the availability of post-employment

3   services." In sum, in addition to having properly transferred the case already in individualized plan for employment

4   (hereinafter "IPE") status to Mr. Icamen after Mr. Gamble's retirement, if the Bureau interpreted administrative and

5   accounting work to be sufficiently synonymous, for the purposes of determining whether the case could be closed,

6   Mr. Icamen was required by Federal law to take affirmative steps to ensure that the Medicaid job was stable before

7   closing the case successfully, and consequently making it eligible for post-employment services. With Mr. Icamen

8   not having taken the required affirmative steps to ensure job stability, Petitioner was subsequently required to start

9   the Bureau's application process from scratch, and the intake appointment for the brand new case was not able to be

10   scheduled until after Petitioner had already been terminated from the Medicaid job, on or about February 7th, 2019.

11   By contrast, if affirmative steps had been taken in the first instance to transfer and close the case properly,

12   post-employment services, which would have been designed to prevent the underlying Title I conduct, such as a job

13   coach, could have easily been put into place within, at most, a week's time. As was stated in the Fifth Amended

14   Complaint, when the Bureau calculated 90 days' worth of job stability from the date Petitioner transitioned from 700

15   Hour status to permanent probationary, on or about June 4th, 2018, the case would have been able to close

16   successfully, and thus be eligible for post-employment services, on or about September 3rd, 2018, a mere 11 days

17   before the first alleged performance deficiency was brought to Petitioner's attention. Additionally, the

18   Rehabilitation Services Administration (hereinafter "RSA"), the Federal entity to whom the Bureau reports its

19   activities, subsequently found the Bureau out of compliance with the mandatory requirements under this section.

20   Petitioner has attached the relevant pages of both RSA's audit report, as well as the Bureau's corrective action plan,

21   as exhibits to this Opposition and Counter-Motion. The resolution date contained in the corrective action plan for

22   the relevant finding is March 5th, 2020, well after the conduct relevant to this case occurred. Until RSA may

23   indicate otherwise, this Court should interpret the potential resolution of that finding to only apply prospectively to

24   events which occurred after that date.

25

26

27

28

**Conclusions**

Re-alleging all allegations previously set forth, both in this Opposition and Counter-Motion, as well as the Fifth Amended Complaint, Petitioner requests that the Court:

1) Deny Respondents' State HR and the Bureau's Motion To Dismiss.

2) Grant leave to amend the Fourth Amended Complaint.

3) Issue an Order to Show Cause and Hearing as to why the desired Writ relief should not have issued in the first instance, or, in the alternative, to reconsider its dismissal of the Writs, based upon clarifying information that has now been provided as to why no other remedy existed concerning the underlying Title I claim.

Dated this 25th day of September, 2020                                          /s/ Steven Cohen

Steven Cohen
Pro Se

# ESSENTIAL FUNCTIONS, WORK PERFORMANCE STANDARDS, AND PERFORMANCE EVALUATIONS

## POSITION FUNCTIONS

| Class Title: Administrative Assistant II | | |
|---|---|---|
| Class Code: 2.211 | Position Control #: 0129 | Budget Account #: 3158 |
| Agency: Division of Health Care Financing and Policy | | |
| Preparer: Marcel Brown | Preparer's Position: HCCIV | Date: 1/22/18 |
| Reviewer: Heather Lazarakis | Reviewer's Position: SSMIII | Date: 1/22/18 |

**ESSENTIAL FUNCTIONS:**

To be eligible for this position, an individual must be able to engage in the following:

1. Place phone calls to locate potential FOCIS recipients.

2. Interact professionally with the public, other workers providing assistance to Medicaid program recipients regarding access to medical care and treatment, information and referral services. Answer phone calls on the customer service line up to 50% of day.

3. Research information and enter data accurately and timely on multiple computer data management systems.

4. Sort and distribute mail, referrals and correspondence.

5. Organize and maintain paper and electronic files; maintain confidentiality of sensitive and confidential information stored.

6. Compose correspondence, create detailed meeting minutes; complete and create multiple forms; coordinate and compile interview documents and schedule interviews.

7. Follow-up with environmental modification providers to have bid requests returns.



| **DIVISION OF HUMAN RESOURCE MANAGEMENT** **EMPLOYEE WORK PERFORMANCE STANDARDS FORM** | Supervisors are responsible for establishing the initial standards, but standards must be reviewed annually and amended when appropriate. The employee must be given the opportunity to provide comment when the standards are revised (NAC 284.468). |
|---|---|

| Employee Name: | Last | Cohen | First | Steven | Ini | Employee ID # | 64958 |
|---|---|---|---|---|---|---|---|
| Class Title: | Administrative Assistant II | | | | | Date Standards Est/Rev: | 2/13/18 |

| Department/Division: | Health and Human Services/Division of Health Care Financing and Policy |
|---|---|

| Agency # (3 digits): | 403 | Home Org # (4 digits): | 3158 | Position Control #: | 0129 |
|---|---|---|---|---|---|

I have read and understand the work performance standards for this position. I understand these standards may be modified after discussion with my immediate supervisor and with the concurrence of the appointing authority.

| Employee Signature: | *Steven Cohen* | Date: | 02/27/18 |
|---|---|---|---|
| Supervisor Title & Signature: | | Date: | 02/27/18 |
| Reviewing Officer Title & Signature: | *SSMIII* | Date: | 2/27/18 |
| Appointing Authority Title & Signature: | *Cody Phinney, Dep. Admin* | Date: | 3/12/18 |

| **Job Elements** (Defined as principal assignments, goals, responsibilities and/or related factors.) | *Weighted Value | **Performance Standards** |
|---|---|---|
| **Job Element #1: Customer Service** <br> a. Answers main customer service phone line for the DHCFP District Offices for up to four hours daily. Complete required forms/databases and submit to appropriate staff for review if applicable. <br> b. Assist recipients in accessing care, maintain customer service log, obtain and verify information from a variety of computerized sources and provide information that requires explanation regarding Medicaid policies and services <br> c. The ability to sort out documents and distribute to appropriate unit, program or agency. <br> d. Determine MMIS issues from Customer Service Calls. Research and identify appropriate course of action according to the processes identified. <br> e. Notify supervisors of potential complaints or threats of further action by recipients or customers. <br> f. Greet and sign-in all District Offices' visitors, to include assigning visitor badges and providing information and referrals. <br> g. Assists recipients, providers and vendors with questions and problems and refer to appropriate resources as necessary. | 30% | **Exceeds Standards:** Exhibits a thorough knowledge of customer service practices and procedures. Able to communicate effectively with recipients in a wide variety of situations. Is able to prioritize issues appropriately and rarely needs assistance. Consistently goes above and beyond in helping recipients resolve their issues with minimal assistance from supervisor or other staff. Consistently volunteers or agrees to stay on the phones beyond their scheduled time as needed. <br> **Meets Standards:** Knows when to seek guidance but generally able to work with little supervision. Works within appropriate time frames unless prevented by extenuating circumstances. Consistently available to answer customer service phone line on assigned schedule and assist walk-ins as needed. Courteous and professional when communicating with recipients. <br> **Does Not Meet Standard:** Is not familiar with customer service practices and procedures. Requires substantial supervision and guidance in resolving recipient's issues via phone line or walk-ins. Complaints have been received from recipients and/or providers related to the delivery of customer service. Does not adhere to the assigned customer service phone line schedule. |

RECEIVED

MAR -7 2018

DHCFP PERSONNEL

| Job Element #4: Other Duties as Assigned | 5% | |
|---|---|---|
| a) Performs additional duties and actively participates in training as assigned by the Unit Supervisor and/or Administration. <br><br> b) Meets the projected requirements in a timely and accurate manner. | | **Exceeds Standards:** Consistently seeks out additional tasks or duties. Once assigned, needs very little oversight. Always completes the task assigned within the deadline. No corrections needed. <br> **Meets Standards:** Accepts and completes tasks with little complaint. Follows directions and needs appropriate oversight. May have minor corrections in completed work. <br><br> **Does Not Meet Standard:** Complains about the task assigned or tries to shirk the responsibility. Has difficulty in following directions and/or requires additional oversight to complete the task. The work is returned for correction. |
| **Job Element #5: DHCFP Policy and Procedure Compliance** | 10% | |
| Demonstrates understanding of and compliance with: <br> • Workplace Safety Program <br> • Attendance and work schedule rules <br> • HIPAA regulations <br> • Dress Code <br> • Confidentiality policies <br> • Mandated reporting requirements <br> • Computer and system use agreements | | **Exceeds Standards:** Exhibits compliance with requirements and makes relevant recommendations or contributions to improve compliance on a regular basis. Is proactive in keeping updated and knowledgeable regarding applicable laws, rules and regulations. Requires minimal supervision. <br> **Meets Standards:** Adheres to all federal, state, and agency's laws, regulations, statutes, policies and procedures. Respects confidentiality of recipients, co-workers, and contacts in all circumstances. Exhibits reliability in attendance/punctuality and in conforming to dress code and other personnel manual sections. Uses agency property and resource responsibly. Requires appropriate supervision and assistance. <br><br> **Does Not Meet Standard:** Demonstrates lack of interest in or understanding of rules, regulations and standards. Shows little concerns for safety of self or others. Has unexplained absenteeism and/or tardiness. Fails to inform supervisors of safety hazards, absences/lateness, and/or any violations of laws, rules or policies. Must be closely supervised and given frequent direction. |

| Job Element #6: Judgment | 5% | |
|---|---|---|

a) Demonstrates the ability to understand when a decision is required, make sound decisions, and accept responsibility for the outcome.

b) Uses all available information and resources to make timely decisions that are compliant with applicable laws and rules.

c) Understands and appropriately uses the chain of command.

d) Informs supervisor or management of problem situations when needed.

e) Is able to identify sensitive or politically charged issues and refer to appropriate person for handling.

**Exceeds Standards:** Demonstrates a high level of skill in solving work problems. Acts decisively and continually assesses issues to evaluate areas for potential improvement.
**Meets Standards:** Demonstrates the ability to consider all facts in order to make sound and logical decisions. Is sufficiently decisive and takes personal responsibility for actions and performance. Appropriately uses the chain of command when issues/concerns are perceived.
**Does Not Meet Standard:** Does not adequately consider all facts related to issues. Is not able to identify and refer problems to appropriate person. Relies on others for assistance and decisions when problem solving.

| Job Element #7: Work Adjustment and Adaptability | 5% | |
|---|---|---|

a) Exhibits the ability to learn the skills required to perform routine tasks and assignments of the current position.

b) Adjusts to new tasks and projects as assigned.

c) Demonstrates a positive attitude towards change and improvement.

d) Is able to adapt to new conditions, constraints and problem situations.

e) Exhibits the ability to modify processes, tactics and strategies when required.

f) Demonstrates the ability to accept direction, constructive criticism, and agency decisions. '

g) Acts decisively and continually assesses issues to evaluate areas for potential self-improvement.

**Exceeds Standards:** Is proactive in acquiring new skills that will improve work performance and prepare for additional future responsibilities. Consistently demonstrates willingness to go "above and beyond" in accepting new work assignments. Takes the lead in seeking out ways to improve work processes and/or outcomes.
**Meets Standards:** Consistently exhibits the ability to adapt and adjust to new tasks, people, situations and policy/procedure constraints.
**Does Not Meet Standard:** Demonstrates unwillingness to learn required skills, to accept new work assignments. Does not easily accept new processes or conditions. Is resistant to change. Has difficulty taking guidance and direction.

| Job Element #8: Cooperation and Teamwork | 5% | |
|---|---|---|
| a) Presents a positive, supportive attitude towards the Division, superiors, colleagues and subordinates.<br><br>b) Maintains harmonious, professional, communication and relationships with co-workers, other units, departments, and agencies.<br><br>c) Behaves towards others with integrity, respect, courtesy, fairness, and self-control.<br><br>d) Recognizes and accepts appropriate authority.<br><br>e) Willingly shares knowledge and expertise.<br><br>f) Works to resolve conflicts with consideration of the viewpoints, opinions, and needs of others. | | **Exceeds Standards:** Takes active steps to improve teamwork among team members in their unit, the Division, the department and other agencies.  Consistently shares expertise with other members. Solicits diverse viewpoint to ensure the best possible outcomes.<br><br>**Meets Standards:** Works well with co-workers on a daily basis in a calm, controlled and courteous manner.  Contributions to the team are positive and made in a timely manner.<br><br>**Does Not Meet Standard:**  Inability to interact in a professional manner with agencies and co-workers.  Creates conflict.  Fails to meet deadlines and/or delays team projects. |

*If a weighted value is not designated, each job element has an equal weight.

**Distribution:  Original to Agency; Copy to Employee; Copy to Supervisor**
NPD-14 Est. 1/03
         Revised 3/12



*Agency Use Only*                                                                 *Central Records Use Only*

### STATE OF NEVADA
### EMPLOYEE APPRAISAL & DEVELOPMENT REPORT
*The contents of this report on performance **must** be discussed between the employee and his or her supervisor
as described in NRS 284.337 and NAC 284.470*

**1. Employee Name: Last**  Cohen                    **First** Steven                              **Initial**

**2. Class Title:**  Administrative Assistant II                 | **3. Employee ID #:**    64958

**4. Dept/Div/Section:**  Health and Human Services / Division of Health Care Financing and Policy     | **5. Date Evaluation Due:**   5/12/18

**6. Agency # (3 digits):** 403  **Home Org # (4 digits):** 3158   **Position Control #:** 0129   | **7. Date Next Evaluation Due:**   9/12/18

**8. Probationary/Trial Period** (check one):                                  **OR**          **Permanent** (check one):
  6 month Probation/Trial: ☐ 2ⁿᵈ month ☐ 5ᵗʰ month ☐ Other
  12 month Probation/Trial: ☒ 3ʳᵈ month ☐ 7ᵗʰ month ☐ 11ᵗʰ month ☐ Other          ☐ Annual   ☐ Other

**9. Work Performance Standards:**  ☒ are an accurate reflection of the position ☐ will be revised to reflect changes

**10. Overall Rating from Page 2, Number 14** (check one):
  ☐ Does Not Meet Standards (DMS)*   ☒ Meets Standards (MS)   ☐ Exceeds Standards (ES)
* If a rating of "Does Not Meet Standards" is given, another evaluation must be completed within 90 days.  The rating may affect adjustments in salary based on merit (NAC 284.194).

**Rater's Printed Name:**    Marcel Brown, HCCIV

**Rater's Signature & Title:** *(signature)*                    **Date:** 4/5/18.   *(mm/dd/yy)*

**11. Additional Supervisory Review** (optional):   ☐ Agree  ☐ Disagree *(Comment Required)*

**Printed Name:**  Steven Cohen

**Signature and Title:** *Steven Cohen*   AA II    **Date:** 04/05/18   *(mm/dd/yy)*

**12a. Date employee received evaluation document:** 04/05/18  **Employee's Initials:** SPC   (Does not indicate agreement or disagreement)

   **b. Employee Response:** NAC 284.470 requires that you complete the section below and sign the report on performance within 10 working days after discussion with your supervisor.
☒ Agree  ☐ Disagree  ☐ Request Review* (If you disagree with the report **and** request a review, you must specify the points of disagreement below or attached.)

   **c. Employee Signature:** *Steven Cohen*    Date evaluation returned to supervisor: 04/05/18

**13. Appointing Authority Review:**   ☐ Agree  ☐ Disagree *(Comment Required)*

**Appointing Authority's Printed Name:**

**Appointing Authority Signature & Title:**                              **Date:**              *(mm/dd/yy)*

\* **Note – Reviewing Officer uses form NPD-15R to respond to employee's request for review as outlined in NAC 284.470**

 

**Employee Evaluation & Development Report – Page** 2

| Employee Name:  (Last) | Cohen | (First) | Steven | (Initial) | |
|---|---|---|---|---|---|
| Employee ID #: 64958 | | | | | |

| 14. Job Elements (Transfer from Employee Work Performance Standards form and provide a numerical rating of 1 = DMS; 2 = MS; or 3 = ES for each job element in column (A). *Please note that whole number ratings are used, not fractions, to rate individual job elements.* | (A) Rating | (B) Weighted Value | (C) Weighted Rating |
|---|---|---|---|
| **Job Element #1:  Customer Service** | 2 | .30 | .60 |
| **Job Element #2:  Unit Clerical Support/ Program Support** | 2 | .30 | .60 |
| **Job Element #3:  Professional Interactions** | 2 | .10 | .20 |
| **Job Element #4:  Other Duties as Assigned** | 2 | .05 | .10 |
| **Job Element #5:  DHCFP Policy and Procedure Compliance** | 2 | .10 | .20 |
| **Job Element #6:  Judgment** | 2 | .05 | .10 |
| **Job Element #7:  Work Adjustment and Adaptability** | 2 | .05 | .10 |
| **Job Element #8:  Cooperation and Teamwork** | 2 | .05 | .10 |
| **Overall Rating  (Scale:  1 to 1.50 = DMS; 1.51 to 2.50 = MS; 2.51 to 3 = ES)** *(A "does not meet standards" rating may affect adjustments based on merit (NAC 284.194). Another evaluation must be completed within 90 days (NRS 284.340).* | | | 2.00 |

**15. Rater's Comments:** *(A "does not meet standards" rating for any job element must include a detailed explanation of the deficiencies.)*
This is your 3 Month Employee Appraisal and Development Report with the Division of Healthcare Financing and Policy for the time period of 2/12/18 to 4/12/18.

As the Administrative Assistant II with the Facility Outreach and Community Integration Services, you are currently responsible for initially processing all referrals that come into the program.  This includes receiving faxed referrals, filtering, checking eligibility, and locating recipients from our LOC as well as MDS reports.  Referrals are received on a weekly, and at times, daily basis.  During this review period you have demonstrated an ability to determine priorities when processing these referrals and executing sound judgment when reviewing them before they are submitted for a healthcare coordinator assignment.

In addition to this you are responsible for uploading all of our electronic files into the application extender on a regular basis as well as scanning and uploading older files that we need to keep based on our retention schedule. You have done an excellent job learning this task and keeping up with the constant flow of cases that need to be updated in this database.

In regards to your customer service, you began working independently on 4/2/18. I have been informed that you are listening to the instructions given and are doing a good job in relaying the necessary information to recipients as you gain knowledge.  Often times it is difficult learning all of the complex responses in conjunction with managing all the unique personalities you are faced with on the line. However, you have voiced recognition of the recipient's concerns and have been able to respond with positivity and humor which is essential when dealing with our population of recipients.

**Employee Evaluation & Development Report – Page** 3

| Employee Name: (Last) | Cohen | (First) | Steven | (Initial) | |
|---|---|---|---|---|---|
| Employee ID #: 64958 | | | | | |

Steven, it is a pleasure having you as a part of the FOCIS Unit and I look forward to working with you through this next review period!

**16. Development Plan & Suggestions:** *(The supervisor will address how the employee can enhance performance and achieve standards; indicates recommendation for further development and training. This section shall be discussed with the employee.)*
1. Continue to participate in Bi-monthly meetings with your supervisor.
2. Continue to complete all mandatory NV State Trainings.
3. Continue to expand your knowledge of the FOCIS/MFP program as well as continue to review changes in NV Medicaid Policy.

**17. Merit Award Program:** *(Provide information to employee relating to the Merit Award Program established in NRS 285.020.)* Please check method(s) used:

☐ Employee Handbook   ☒ State Human Resource website:   ☐ Other (List details)_____
http://hr.nv.gov/

**Distribution:   Original to Division of Human Resource Management; Copy to Agency; Copy to Employee**   NPD-15
Rev. [11/15]

| Agency Use Only | | Central Records Use Only |
|---|---|---|

RECEIVED

AUG 1 0 2019

DHCFP PERSONNEL



STATE OF NEVADA
**EMPLOYEE APPRAISAL & DEVELOPMENT REPORT**
*The contents of this report on performance **must** be discussed between the employee and his or her supervisor
as described in NRS 284.337 and NAC 284.470

RECEIVED

AUG 1 5 2018

DEPT. OF ADMIN
DHRM - RECORDS

| 1. Employee Name: Last    Cohen | First   Steven | | Initial |
|---|---|---|---|

| 2. Class Title:  Administrative Assistant II | **3. Employee ID #:** | 64958 |
|---|---|---|

| 4. Dept/Div/Section: | Health and Human Services / Division of Health Care Financing and Policy | **5. Date Evaluation Due:** | 9/12/18 |
|---|---|---|---|

| 6. Agency # (3 digits): 403  Home Org # (4 digits): 3158    Position Control #: 0129 | 7. Date Next Evaluation Due: | 1/12/19 |
|---|---|---|

**8. Probationary/Trial Period** (check one):                                    **OR**          **Permanent** (check one):
6 month Probation/Trial:  ☐ 2nd month ☐ 5th month ☐ Other
12 month Probation/Trial:  ☐ 3rd month ☒ 7th month ☐ 11th month ☐ Other          ☐ Annual      ☐ Other

**9. Work Performance Standards:**  ☒ are an accurate reflection of the position  ☐ will be revised to reflect changes

**10. Overall Rating from Page 2, Number 14** (check one):
☐ Does Not Meet Standards (DMS)*    ☒ Meets Standards (MS)    ☐ Exceeds Standards (ES)
* If a rating of "Does Not Meet Standards" is given, another evaluation must be completed within 90 days.  The rating may affect adjustments in salary based on merit (NAC 284.194).

**Rater's Printed Name:**   Marcel Brown, HCCIV

**Rater's Signature & Title:**                                         **Date:** 8/7/18   (mm/dd/yy)

**11. Additional Supervisory Review** (optional):    ☒ Agree    ☐ Disagree *(Comment Required)*

**Printed Name:**   Heather Lazarakis

**Signature and Title:**                 SSMITI                **Date:** 8/7/18   (mm/dd/yy)

**12a. Date employee received evaluation document:** 08/09/18  **Employee's Initials:** SRC  (Does not indicate agreement or disagreement)

   **b. Employee Response:** NAC 284.470 requires that you complete the section below and sign the report on performance within 10 working days after discussion with your supervisor.
☒ Agree ☐ Disagree ☐ Request Review* (If you disagree with the report **and** request a review, you must specify the points of disagreement below or attached.)

   **c. Employee Signature:**  Steven Cohen          **Date evaluation returned to supervisor:** 08/07/18

**13. Appointing Authority Review:**    ☒ Agree    ☐ Disagree *(Comment Required)*

**Appointing Authority's Printed Name:**  Cody Phinney, Dep. Administrator

**Appointing Authority Signature & Title:**  Cody Phinney     **Date:** 8/13/18   (mm/dd/yy)

* Note – Reviewing Officer uses form NPD-15R to respond to employee's request for review as outlined in NAC 284.470

403/3158

## Employee Evaluation & Development Report – Page 2

| Employee Name: (Last) | Cohen ✓ | (First) | Steven ✓ | | (Initial) | |
|---|---|---|---|---|---|---|
| Employee ID #: 64958 ✓ | | | | | | |

| 14. Job Elements (Transfer from Employee Work Performance Standards form and provide a numerical rating of 1 = DMS; 2 = MS; or 3 = ES for each job element in column (A). *Please note that whole number ratings are used, not fractions, to rate individual job elements.* | (A) Rating | (B) Weighted Value | (C) Weighted Rating |
|---|---|---|---|
| **Job Element #1:  Customer Service** | 2 | .30 | .60 |
| **Job Element #2:  Unit Clerical Support/ Program Support** | 2 | .30 | .60 |
| **Job Element #3:  Professional Interactions** | 2 | .10 | .20 |
| **Job Element #4:  Other Duties as Assigned** | 2 | .05 | .10 |
| **Job Element #5:  DHCFP Policy and Procedure Compliance** | 2 | .10 | .20 |
| **Job Element #6:  Judgment** | 2 | .05 | .10 |
| **Job Element #7:  Work Adjustment and Adaptability** | 2 | .05 | .10 |
| **Job Element #8:  Cooperation and Teamwork** | 3 | .05 | .15 |
| **Overall Rating  (Scale:  1 to 1.50 = DMS; 1.51 to 2.50 = MS; 2.51 to 3 = ES)** *(A "does not meet standards" rating may affect adjustments based on merit (NAC 284.194). Another evaluation must be completed within 90 days (NRS 284.340).* | 100% | | 2.05 |

**15. Rater's Comments:** *(A "does not meet standards" rating for any job element must include a detailed explanation of the deficiencies.)*
This is your 7 Month Employee Appraisal and Development Report with the Division of Healthcare Financing and Policy for the period of 4/13/18 to 8/2/18.

During this review period you have been diligent in processing all of our fax and Level of Care (LOC) referrals in a timely manner. Eligibility is checked on a regular basis according to the criteria for processing our cases.  You frequently check our unit fax box to ensure referrals do not sit and call potential referrals to confirm appropriateness for our program.  When you have had questions about processing cases you have gathered additional information about the referrals and have brought your questions to me before moving forward with an action.

In regard to your customer service, I am told on a frequent basis how well you have picked up on Medicaid concepts in just a short period of time.  You are able to review a recipient's information, analyze and explain coverage as well as identify glitches that may have occurred in our systems. Utilizing this information, you have been able to help co-workers who have come to you for assistance and diagnosis issues within our Unit reports.

In terms of team work and cooperation, you frequently allow yourself to be available to assist anyone who asks, whatever is the need.  You consistently share your expertise but more importantly seek diverse viewpoints to come up with the best possible outcome.  You are often very positive and lend to an overall uplifted morale when you are present in the office. You regularly go above and beyond to enhance a supportive team atmosphere.  For this reason, an Exceeds Standard rating is warranted in Job Element#8: Cooperation and Teamwork.

**Employee Evaluation & Development Report – Page** 3

| Employee Name: (Last) | Cohen | (First) | Steven | (Initial) | |
|---|---|---|---|---|---|
| Employee ID #: 64958 | | | | | |

Steven, I appreciate your enthusiasm and excitement for our unit and division tasks and look forward to working with you during this next review period!

**16. Development Plan & Suggestions:** *(The supervisor will address how the employee can enhance performance and achieve standards; indicates recommendation for further development and training. This section shall be discussed with the employee.)*
1. Continue to participate in Bi-monthly meetings with your supervisor.
2. Continue to complete all mandatory NV State Trainings.
3. Continue to expand your knowledge of the FOCIS/MFP program as well as continue to review changes in NV Medicaid Policy.

**17. Merit Award Program:** *(Provide information to employee relating to the Merit Award Program established in NRS 285.020.)* Please check method(s) used:
☐ Employee Handbook   ☒ State Human Resource website:   ☐ Other (List details)_____
http://hr.nv.gov/

**Distribution:   Original to Division of Human Resource Management; Copy to Agency; Copy to Employee**   NPD-15
Rev. [11/15]