# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

STEVEN COHEN,

    Plaintiff

v.

RICHARD WHITLEY, et al.,

    Defendants

Case No.: 2:19-cv-01033-APG-EJY

**Order**

[ECF Nos. 26, 30, 42, 52, 53, 54, 60]

Plaintiff Steven Cohen brings this disability discrimination action against three defendants: the Nevada Department of Employment, Training, and Rehabilitation – Bureau of Vocational Rehabilitation (DETR)[1]; the Nevada Department of Health and Human Services – Division of Health Care Financing and Policy (DHHS); and the Nevada Department of Administration – Division of Human Resource Management (DOA).[2]  Cohen alleges that he has autism spectrum disorder (formerly Asperger's syndrome) and contends that his employer, DHHS, discriminated against him by denying him reasonable accommodation to use a tape recorder and by firing him because of his disability.  He also alleges that DETR prematurely closed his vocational rehabilitation services case, which resulted in him not having access to employment counseling for his dispute with DHHS.

---

[1] Cohen sues the bureaus and divisions within the Nevada departments.  But for clarity, I will refer to the defendants as the departments unless the division is relevant.

[2] These are the remaining defendants in this action.  Defendants Richard Whitley, Deborah Bierman, Cody Phinney, Tammy Moffitt, Heather Lazarakis, Marcel Brown, Emily Kuhlman, the U.S. Department of Health and Human Services, the U.S. Equal Employment Opportunity Commission (EEOC), the U.S. Rehabilitation Services Administration, the Nevada Equal Rights Commission, and the Bureau of Employment Security within DETR were terminated when Cohen did not include them in his amended complaints. ECF Nos. 6, 10, 19.

Cohen sues the defendants under Title I of the Americans with Disabilities Act (ADA), the Rehabilitation Act, Nevada's anti-discrimination statute, and the Due Process Clause and Equal Protection Clauses of the Fourteenth Amendment.  DETR and DOA move to dismiss, arguing that the Eleventh Amendment bars the claims, that qualified immunity applies, and that Cohen failed to state any claims upon which relief can be granted.  In the alternative, they move to strike Cohen's fourth amended complaint for lack of a signature.  DHHS separately moves to dismiss for insufficient service of process and because it contends that an administrative hearing has a preclusive effect on Cohen's claims.  Cohen moves for leave to amend his complaint to remedy the lack of signature and to add more information.  He also moves for status checks and for an expedited briefing or trial schedule.

I deny Cohen's motions for status checks as moot.  I grant DETR and DOA's motion to strike Cohen's fourth amended complaint because it lacks a signature.  I deny Cohen's motion for leave to amend with his proposed fifth amended complaint because it is futile, but I grant him leave to amend some claims with a new complaint.  Cohen has had multiple opportunities to amend, so if he chooses to file a new complaint he must cure the deficiencies or I will dismiss it without leave to amend.  I deny Cohen's motion for an expedited briefing or trial schedule.

## I.       **BACKGROUND**[3]

The Bureau of Vocational Rehabilitation (BVR), a bureau within DETR, provides employment assistance to individuals with disabilities as part of the vocational rehabilitation services program, and Cohen has been a client for several years. ECF No. 28 at 2.  In part, these services involve developing individualized plans for employment (IPE) for its clients. *Id.*  When

---

[3] This section is based on the facts alleged in Cohen's proposed fifth amended complaint. ECF No. 28.

1   clients are employed for at least 90 days as part of their IPEs and other requirements are met,

2   client cases may be closed but can be reopened in post-employment status to assist clients in

3   dealing with issues with their employers. *Id.*  This assistance may include helping clients

4   understand why their jobs may be at risk and teaching them proper workplace behaviors. *Id.*  In

5   June 2017, Cohen was assigned a new vocational rehabilitation counselor, Stephen Icamen, who

6   opened a new case for Cohen to help him obtain an entry-level accounting position. *Id.* at 3.

7       In mid-November 2017, Cohen got in a dispute with Icamen after Cohen inquired about a

8   job vacancy within DETR. *Id.*  This dispute was never resolved. *Id.*  On February 12, 2018,

9   Cohen was hired by the Division of Health Care Financing and Policy (DHCFP), a division

10   within DHHS, as an administrative assistant. *Id.*  On February 27, DETR closed Cohen's

11   vocational services case even though he had not achieved his stated employment outcome yet. *Id.*

12   Because the case was closed prematurely, Cohen was not eligible to use BVR's post-

13   employment services to assist him with his subsequent issues with DHCFP. *Id.*

14       Cohen was hired by DHCFP through the 700 Hour Program, a program designed to

15   increase the number of persons with disabilities in the State workforce by establishing 700-hour

16   appointments. *Id.* at 4.  BVR recommends eligible candidates to Nevada's human resources

17   division (DHRM) within the Department of Administration and the DHRM codes them as

18   priority candidates for certain state jobs. *Id.*  In June 2018, Cohen completed his 700 hours with

19   DHCFP and it then opted to continue his employment on a probationary basis. *Id.*  Cohen

20   received two satisfactory performance evaluations in April and August. *Id.*  But on September

21   14, he received negative feedback because he was instructing another assistant on her duties,

22   which was beyond the scope of his job. *Id.*  On October 29, Cohen again received negative

23   feedback for going beyond his job scope after he sent a reminder e-mail to the team. *Id.* at 5.

3

On that same day, Cohen told his immediate supervisor, Marcel Brown, about his autism. *Id.*  For the following month of November, Cohen sent DHCFP multiple revised memos requesting several accommodations. *Id.*  One of his requested accommodations was for a tape recorder because he was required to take meeting minutes and his autism made it challenging to process information at a normal rate, to identify voices, and to articulate conversations verbatim. *Id.* at 5, 22.  In response to Cohen's accommodation requests, DHCFP sent Cohen a medical inquiry form, which was completed. *Id.* at 5.  Around this time, Cohen also sought post-employment services from BVR to assist him with DHCFP, but he learned that his case had been closed. *Id.*  Because it was closed, Cohen had to create a new case with BVR and he was unable to get assistance until February 2019. *Id.*

On November 29, 2018, Brown issued Cohen a letter of instruction, which documented the negative feedback they had discussed and laid out work expectations going forward. *Id.* at 6, 31.  Although Cohen's complaint characterizes the letter as documenting only the previous two incidents, the letter (which Cohen attached to his proposed fifth amended complaint) discussed additional incidents after October where Cohen went beyond the scope of his job. *Id.* at 6, 31.

On December 11, Cohen submitted an inquiry to the EEOC about DHHS for disability discrimination and retaliation, although he did not specify the basis for these allegations. *Id.* at 6, 15.  On December 21, DHCFP granted some of Cohen's accommodation requests, including more time to complete the meeting minutes, but denied his request for a tape recorder. *Id.* at 5, 19.  On December 26, Cohen responded to DHCFP's denial of his tape recorder request in order "to continue the interactive process." *Id.* at 6.

On January 2, 2019, Cohen was terminated. *Id.*  Cohen contends that "other employees similarly situated had reasonable accommodations negotiated in good faith and/or were retained

1   subsequent to that date" and that DHCFP's failure to negotiate with him and decision to fire him

2   amounts to "disparate treatment and impact discrimination." *Id.*  Because Cohen was terminated

3   before the end of his probationary period, he alleges he had "no legally permissible appellate

4   relief . . . to more expeditiously have remedied the wrongful termination." *Id.*

5           Cohen challenged his dismissal under Nevada's whistleblower law before a Nevada State

6   Personnel Commission hearing officer. ECF Nos. 28 at 6; 42 at 16.[4]  On January 6, 2019, the

7   hearing officer dismissed his claim, determining that Cohen had not set out the facts and

8   circumstances of his whistleblower claim. ECF No. 42 at 17-18.  On March 1, the EEOC

9   interviewed Cohen in response to his inquiry. ECF No. 28 at 6.  Cohen then made a formal

10  charge and the EEOC provided him a right to sue letter. *Id.* at 6, 12.

11          Acting pro se, Cohen filed the original complaint for this action on June 17, 2019. ECF

12  No. 1.  His original complaint and first amended complaint were screened and dismissed with

13  leave to amend. ECF Nos. 4, 9.  Cohen filed a second amended complaint. ECF No. 10.  He

14  subsequently filed a "Third Amended Emergency Petitions for Writs of Mandamus and/or

15  Prohibition," which I denied.  ECF Nos. 13; 18 at 2-3.  Cohen then filed his "Fourth Amended

16  Petition for Judicial Review/Complaint/Writs of Mandamus and/or Prohibition," which alleges

17

18  ---

19  [4] Although Cohen did not attach the Nevada State Personnel Commission dismissal order to his
    complaint, DHHS attached it to its motion to dismiss. ECF No. 42 at 16.  I typically cannot
20  consider exhibits outside of a complaint at the motion to dismiss stage without converting the
    motion into one for summary judgment, but the incorporation by reference doctrine allows me to
    treat certain documents as if they were originally attached to the complaint. *Khoja v. Orexigen*
21  *Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).  The doctrine applies when a plaintiff's
    complaint discusses the contents of a document without attaching it and no party questions its
22  authenticity. *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1117 (9th Cir. 2018).  The Nevada State
    Personnel Commission dismissal is incorporated by reference because Cohen discusses the
23  dismissal in both the fourth and fifth amended complaints. ECF Nos. 19 at 7; 28 at 6.  He also
    does not challenge its authenticity and he provided the same document in a different motion.
    ECF No. 59-1 at 2-5.

1   claims under Title I of the ADA, Nevada's anti-discrimination law, the federal Rehabilitation

2   Act, and the Fourteenth Amendment. ECF No. 19.

3          DETR and DOA moved to dismiss or strike ECF No. 19, which DHHS joined. ECF Nos.

4   26, 43.  DHHS also filed a separate motion to dismiss, which the other defendants joined, for

5   insufficient service of process and failure to state a claim. ECF Nos. 42, 44.  Cohen filed a

6   motion for leave to amend to add a missing signature and to update information. ECF No. 30 at

7   2.  Cohen also filed two motions for status checks and a motion for expedited briefing and/or

8   trial schedule. ECF Nos. 52, 53, 54.

9   **II.    <u>ANALYSIS</u>**

10         Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to plead a "short and plain

11  statement of the claim showing that the pleader is entitled to relief."  For a motion to dismiss

12  under Rule 12(b)(6), I apply a two-step process to determine whether a party has stated a claim.

13  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  First, I must accept as true all the

14  complaint's allegations and draw all reasonable inferences in the plaintiff's favor. *Ashcroft v.*

15  *Iqbal*, 556 U.S. 662, 678 (2009).  Legal conclusions and "mere conclusory statements" are not

16  entitled to an assumption of truth. *Id.* at 678-79.  Second, I must determine whether the

17  complaint's factual allegations put forward a plausible claim for relief. *Id.* at 679.  This is a

18  context-specific determination that requires drawing on my judicial experience and common

19  sense. *Id.* at 679.  Complaints by pro se litigants should be construed liberally, but they must still

20  comply with the rules of procedure. *Ghazali v. Moran,* 46 F.3d 52, 54 (9th Cir. 1995).

21         Under Rule 12(f), I may grant a motion to strike a pleading if it has redundant,

22  immaterial, impertinent, or scandalous matters.  Additionally, I "must strike an unsigned paper"

23

1  unless it is promptly corrected. Fed. R. Civ. P. 11(a); *see also* LR IC 7-1 ("The [C]ourt may

2  strike documents that do not comply with these rules.").

3       **A.       The Operative Complaint**

4       Cohen's naming and filing of documents has led to some confusion so I will clarify the

5  docket.  The document Cohen filed as ECF No. 19 is titled "Fourth Amended Petition for

6  Judicial Review/Complaint/Writs of Mandamus and/or Prohibition."  Although stylized as a

7  motion, ECF No. 19 appears to be an unauthorized amended complaint.  All the parties treat ECF

8  No. 19 as Cohen's operative complaint.  Cohen included "Complaint" in the title of ECF No. 19

9  and he refers to it as his "Fourth Amended Complaint" in his motion for leave to amend. ECF

10  No. 30 at 2.  The defendants also base their motions to dismiss on ECF No. 19 rather than

11  Cohen's second amended complaint.[5]  So although Cohen filed ECF No. 19 without leave, I will

12  treat it as the operative complaint and will refer to it as the "fourth amended complaint."

13  Because that is the operative complaint, it supersedes Cohen's second amended complaint.

14  *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992), *as amended* (May 22, 1992) (noting that

15  a superseded complaint is "treated thereafter as non-existent").

16       Cohen also filed ECF No. 28, which is titled "Signed Fourth or Fifth Amended Petition

17  for Judicial Review/Complaint/Writs of Mandamus and/or Prohibition."  This is not intended to

18  be a new operative complaint but is rather his proposed fifth amended complaint filed

19  prematurely. ECF No. 30 at 4 (referencing ECF No. 28 as his proposed amended complaint for

20  his countermotion for leave to amend).

21

22

23  [5] There is no third amended complaint.  After filing his second amended complaint, Cohen
labeled ECF No. 13 as "Third Amended Emergency Petitions for Writs of Mandamus and/or
Prohibition."  ECF No. 19 continues that numbering.

**B.     Motion to Strike Fourth Amended Complaint (ECF No. 26)**

Rule 11(a) requires that every pleading be personally signed by a party who is unrepresented. *See also* LR IC 5-1(b) ("The signatory must be the attorney or pro se party who electronically files the document.").  The defendants move to strike Cohen's fourth amended complaint because it was not signed.  Cohen admits it was an oversight and requests leave to amend to fix it, noting that he "promptly corrected" it by filing his fifth amended complaint with a signature. ECF No. 29 at 7.

I grant the defendants' motion to strike Cohen's fourth amended complaint because it is not signed.  Although Cohen filed the signed fifth amended complaint, it contains several other differences from the fourth amended complaint, so it is not the same document.  Because I grant the motion to strike, I deny as moot the defendants' motions to dismiss the fourth amended complaint.

**C.     Motion for Leave to Amend (ECF No. 30)**

Leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2).  But I may deny leave to amend when there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (internal quotations and citations omitted).  Amendment is futile if "it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Id.* (quoting *Polich v.*

*Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991)).  Cohen moves for leave to amend with his proposed fifth amended complaint to include a signature and to add more information.[6]

The defendants argue that Cohen should be denied leave to amend because he has repeatedly failed to cure deficiencies in his previous amendments and amendment is futile because the defendants are entitled to sovereign immunity.[7]  Cohen responds that sovereign immunity does not apply and that leave should be granted liberally for pro se litigants.

Cohen's fifth amended complaint has several deficiencies so proceeding with it as is would be futile.  I thus deny Cohen's motion for leave to amend with his proposed fifth amended complaint.  However, I grant Cohen leave to amend his Title I ADA, Rehabilitation Act, and due process claims with a new complaint if he can remedy the defects I identify in this order.  I do not give him leave to amend his state law claims because amendment would be futile.

### 1. Eleventh Amendment Sovereign Immunity

Under the Eleventh Amendment, states are immune from suit in federal court unless there is valid congressional abrogation or state waiver. *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999).  This immunity applies to both federal and state law claims. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).  Arms of the state, such as state agencies, are also entitled to sovereign immunity. *Id.*  Congress abrogates state sovereign immunity if it has "unequivocally expressed its intent to abrogate the immunity" and when it acts "pursuant to a valid exercise of power." *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 55 (1996) (internal

---

[6] Local Rule 15-1 requires a party to attach the proposed amended pleading to the motion for leave to amend.  But because Cohen is pro se, I will consider his motion as if he had attached his proposed fifth amended complaint to the motion (rather than filing it separately on the docket).

[7] The motions to dismiss are technically mooted.  But because the fourth amended complaint and proposed fifth amended complaint have substantially similar allegations and claims, I have considered the arguments in the motions to dismiss in determining futility of the proposed fifth amended complaint.

quotations and citations omitted).  A state may also waive its sovereign immunity expressly or when it voluntarily invokes the federal court's jurisdiction. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999); *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 614 (2002).

Under *Ex parte Young*, there are some circumstances in which a private party may sue a state official instead of the state, so that the suit will not be treated as being against the state. *Pennhurst*, 465 U.S. at 101–02 (citing *Ex parte Young*, 209 U.S. 123 (1908)).  In general, a federal court "may award injunctive relief in a suit against a state official, but it cannot award retroactive monetary relief." *Edelman v. Jordan*, 415 U.S. 651, 665 (1974).  *Ex parte Young* does not apply to state law claims, even if a state official is sued. *Pennhurst*, 465 U.S. at 106.

The defendants argue they are immune from suit under the Eleventh Amendment for the ADA and due process/equal protection claims because they are arms of the state and Congress has not abrogated that immunity.  The defendants further argue that state agencies are not "persons" for purposes of § 1983 claims.  Cohen responds that Congress abrogated the state's immunity by adopting the ADA and including states as covered entities in its definition.  He also argues that a Nevada statute defines "person" to include the State of Nevada or any of its political subdivisions.

The proposed fifth amended complaint sues only the divisions or departments of the state of Nevada.  As such, the defendants are arms of the state entitled to sovereign immunity. Congress did not abrogate sovereign immunity in passing Title I of the ADA. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 360 (2001).  Similarly, when Congress passed 42 U.S.C. § 1983—the statute that provides the "federal forum to remedy many deprivations of civil liberties" like due process claims—it did not abrogate sovereign immunity. *Will v. Mich. Dep't*

1  *of State Police*, 491 U.S. 58, 66 (1989); *Quern v. Jordan*, 440 U.S. 332, 342 (1979).

2  Additionally, § 1983 cannot be used to sue states or state agencies because they are not

3  "persons" within the statute's meaning. *Will*, 491 U.S. at 66.

4       Nevada has not waived its sovereign immunity in federal court. Nev. Rev. Stat.

5  § 41.031(3) ("The State of Nevada does not waive its immunity from suit conferred by

6  Amendment XI of the Constitution of the United States.").  This is not a removal case and there

7  is no other indication that the defendants voluntarily invoked federal court jurisdiction.

8       Because the defendants are arms of the state and there is no congressional abrogation or

9  state waiver, the defendants are entitled to sovereign immunity for claims under the ADA, state

10  law, and due process/equal protection clauses.  Thus, the proposed fifth amended complaint, as

11  is, would be futile because sovereign immunity would bar those claims.

12       But it is not clear that all amendment would be futile.  Under *Ex parte Young*, sovereign

13  immunity might not bar Cohen from suing state officials in their official capacities[8] for his

14  requested injunctive relief[9] of restoring his employment with DHCFP and granting his

15  accommodation request. *See Edelman*, 415 U.S. at 665.  He also might not be barred from suing

16  state officials in their personal capacities for money damages for a § 1983 due process/equal

17  protection claim. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  But sovereign immunity

18  would still bar Cohen from seeking money damages, such as punitive damages or back pay,

19

20  [8] "Personal-capacity suits seek to impose personal liability upon a government official for
actions he takes under color of state law.  Official-capacity suits, in contrast, generally represent
only another way of pleading an action against an entity of which an officer is an agent."

21  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (internal quotations and citations omitted).

22  [9] Cohen also requests "automatic amendment of [his] rate of pay from grade 25, step 01 to grade
25 step 03," which is the alleged pay increase he would have achieved through continued

23  employment. ECF No. 28 at 9.  It is unclear what this would apply to given that Cohen does not
appear to currently work for the state. *Id.* at 7 (explaining that he had been hired in Nevada's
Division of State Parks but no longer works there).

against state officials in their official capacities and for state law claims regardless of how they are pleaded. *Edelman*, 415 U.S. at 665; *Pennhurst*, 465 U.S. at 106.

Amendment would be futile for Cohen's state law claims because they are barred by sovereign immunity.  But it is not clear that amendment would be futile for the ADA and due process/equal protection claims so long as he sues state officials in a way that comports with *Ex parte Young*.[10]

2.   Effect of Administrative Hearing

An unreviewed state agency determination will be given preclusive effect if the agency proceeding had enough safeguards to be equated with a state court judgment. *Miller v. Cnty. of Santa Cruz*, 39 F.3d 1030, 1033 (9th Cir. 1994), *as amended* (Dec. 27, 1994).  Under Nevada law, res judicata applies to agency decisions when the agency acted in a "judicial capacity" and the agency resolved disputed issues of fact, which the parties "had an adequate opportunity to litigate." *Holt v. Reg'l Tr. Servs. Corp.*, 266 P.3d 602, 605 (Nev. 2011) (quoting *United States v. Utah Constr. Co.*, 384 U.S. 394, 421–22 (1966)).  Res judicata bars a suit when (1) "the issue decided in the prior adjudication was identical to the issue presented in the action in question;" (2) "there was a final judgment on the merits;" and (3) "the party against whom the judgment is asserted was a party, or in privity with a party to the prior adjudication." *Britton v. City of N. Las Vegas*, 799 P.2d 568, 569 (Nev. 1990).

---

[10] The defendants do not address Cohen's Rehabilitation Act claim.  When a state accepts Rehabilitation Act funds, it waives its immunity from Section 504 of the Rehabilitation Act, which deals with disability discrimination. *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1186 (9th Cir. 2003).  However, Section 102 of the Rehabilitation Act, which deals with vocational rehabilitation services, does not contain a similar express waiver provision. *Snell v. Vocational Rehab. State Unit Pers.*, No. 3:20-CV-00242-MO, 2020 WL 4506779, at *3 (D. Or. Aug. 5, 2020).  As discussed below, Cohen has not specified what section he bases his Rehabilitation Act claim on, so it is not clear that sovereign immunity makes the claim futile.

Cohen previously brought a Nevada whistleblower retaliation claim against DHHS before a Nevada State Personnel Commission hearing officer. ECF No. 42 at 16.  The statute allows state employees who believe they experienced retaliation for having disclosed information concerning improper government action to dispute the adverse action. Nev. Rev. Stat. § 281.641(1).  The employee must state with particularity the facts and circumstances of the disclosure of improper governmental action and the retaliation taken against them. *Id.* § 281.641(1)(a)-(b).  In Cohen's agency proceeding, the hearing officer granted DHHS's motion to dismiss because Cohen had not provided documents that "set forth, with particularity" that any disclosure of improper governmental action occurred, or the nature of any retaliation taken against him. ECF No. 42 at 2-3.  The hearing officer also noted that Cohen had not included the complaints he made to the EEOC or Nevada Equal Rights Commission (NERC) so there was no documentation that DHHS was aware of Cohen's complaints during his employment. *Id.* at 3. An employee can appeal the hearing officer's determination to a Nevada district court, but nothing before me indicates that Cohen did this. Nev. Rev. Stat. § 233B.130.

The defendants argue that this federal case is an improper attempt to appeal the Personnel Commission hearing officer's decision.  They point to Cohen's statements that he made "similar allegations before the State's Hearings Division" and that he "effectively seeks judicial review of" the decision to dismiss his claim there. ECF Nos. 19 at 7; 28 at 6.  They further argue that the administrative decision precludes Cohen's § 1983 claims in federal court.  Cohen responds that he only referenced the state administrative dismissal to inform this court that "any review request of that decision would have been futile due to the exemption clause which exists, specific to Medicaid." ECF No. 46 at 2.

1    In considering Cohen's clarification in his brief, Cohen is not asking for a review of the

2    hearing officer's dismissal.  At this stage, it is unclear whether the state hearing officer's

3    dismissal of Cohen's retaliation whistleblower claim meets the elements of res judicata.  The

4    motion to dismiss did not go through the elements and how they apply here, so there was no

5    discussion on whether the issues are identical or whether there was a final judgment on the

6    merits.  More information may be necessary to make such a determination.[11]  Because it is not

7    apparent whether res judicata would bar this suit, it is not clear that amendment of Cohen's

8    remaining claims would be futile on that basis.

9              3.   Qualified Immunity

10   An official is entitled to qualified immunity in their individual capacity unless the

11   violation of a constitutional right was "clearly established" at the time of the official's alleged

12   misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S.

13   194, 198 (2001)).  Qualified immunity protects state officials, not state entities. *See Harlow v.*

14   *Fitzgerald*, 457 U.S. 800, 817–18 (1982).  There are no state officials currently in this suit.  To

15   the extent that the defendants intended to argue that amendment to include state officials would

16   be futile because any official would be entitled to qualified immunity, I decline to decide that at

17   this stage.  Qualified immunity is an affirmative defense that the government official has the

18   burden of establishing. *Frudden v. Pilling*, 877 F.3d 821, 831 (9th Cir. 2017).  Without any

19   officials in this suit and without a clear picture of the claims, it is premature to decide the issue.

20

21   [11] In assessing this argument, I did not consider the additional documentation about the
     administrative hearing that Cohen provided in his reply to the expedited briefing and trial
22   schedule motion. ECF Nos. 59-1 at 6-23; 59-2 at 1-9.  The documents were not provided in the
     context of the motion to dismiss or motion for leave to amend, they were presented for the first
23   time in a reply brief, and no party has presented an argument as to why it would be proper to
     consider them.

1        4.  <u>Failure to State a Claim</u>

2        Even if Cohen had addressed the sovereign immunity issues, amendment with the fifth

3   amended complaint would be futile because Cohen failed to sufficiently allege his claims to meet

4   the required pleading standards.  But it is not clear that Cohen would be unable to remedy these

5   pleading deficiencies.  So I grant leave to amend the ADA, due process/equal protection, and

6   Rehabilitation Act claims.[12]

7                    *i.  Title I of the ADA*

8        Under Title I of the ADA, an employer shall not discriminate against a "qualified

9   individual with a disability because of the disability of such individual" in the context of their

10  employment. 42 U.S.C. § 12112(a).  Discrimination is defined to include failing to provide

11  reasonable accommodations to an "otherwise qualified individual with a disability" and

12  excluding or denying equal jobs or benefits to qualified individuals with disabilities. *Id.*

13  § 12112(b)(4), (5)(A).  Employers are also required to engage in the "interactive process" to

14  explore possible accommodations in good faith. *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d

15  1128, 1137 (9th Cir. 2001).  For an unlawful discharge claim, Cohen must allege "(1) that he is a

16  disabled person within the meaning of the ADA; (2) that he is qualified, that is with or without

17  reasonable accommodation (which he must describe), he is able to perform the essential

18  functions of the job; and (3) that the employer terminated him because of his disability." *Cooper*

19  *v. Neiman Marcus Grp.,* 125 F.3d 786, 790 (9th Cir. 1997), *as amended on denial of reh'g and*

20

21  _____

    [12] The defendants argue that all of Cohen's claims are barred by the law-of-the-case doctrine.

22  That doctrine does not apply to the review of amended complaints. *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1043 (9th Cir. 2018).  If I determine that "the amended

23  complaint is substantially the same as the initial complaint," then I am "free to follow the same reasoning and hold that the amended claims suffer from the same legal insufficiencies." *Id*.  But I am not "bound by any law of the case." *Id.*

                                    15

*reh'g en banc* (Dec. 4, 1997) (internal quotations and citations omitted).  A plaintiff is required to exhaust his remedies by filing a charge with the EEOC prior to filing a claim in federal court. *See* 42 U.S.C. § 2000e–5(e), (f)(1).

The defendants argue that Cohen has failed to exhaust his remedies because he did not attach his EEOC letter to the fourth amended complaint, that he has not alleged his autism disorder adversely affects any major life activities, and that he has failed to allege how he was discriminated against because of his disability.  Cohen argues that he attached the EEOC letter to his fifth amended complaint, that he has alleged autism affects the major life activity of communication, and that he was fired after telling his employer about his disability.

If Cohen chooses to amend his complaint, he must attach the EEOC right to sue letter to his amended complaint.  Even though Cohen attached the letter to his proposed fifth amended complaint, he had previously failed to attach the letter to some of his amended complaints even though both Judge Foley and Judge Youchah had instructed him to do so. ECF Nos. 4 at 3; 9 at 3.  If Cohen does not include the EEOC right to sue letter again, I will dismiss the Title I ADA claim without leave to amend.

Cohen has adequately pleaded that his autism disorder adversely affects his major life activities.  A disability is a physical or mental impairment that substantially limits one or more major life activities. 42 U.S.C. §§ 12102(1)(A)-(C).  Major life activities include "communicating." 29 C.F.R. § 1630.2(i)(1)(i).  The relevant ADA regulations include "autism" among its examples of types of impairments that substantially limit major life activities. *Id.* § 1630.2(j)(3)(iii).  Cohen has identified autism as his disability and has alleged it affects his communication. ECF No. 28 at 5 ("delays in the ability to process verbal information"); *id.* at 22 (explaining in his accommodation request why he needs a tape recorder for meetings).

Cohen has not sufficiently alleged that he suffered an adverse employment decision because of his disability, a pleading deficiency that was already pointed out to him in a previous screening order. ECF No. 4 at 4.  Cohen alleges that he informed DHCFP of his disability and that he was fired approximately two months later. ECF No. 28 at 38.  The fifth amended complaint contends that DHCFP fired Cohen "while other employees similarly situated had reasonable accommodations negotiated in good faith and/or were retained subsequent to that date.  By failing to negotiate in good faith and/or retain Petitioner, both disparate treatment and impact discrimination occurred." *Id.* at 6.  Cohen has not alleged facts to support his legal conclusion that he was fired because of his disability.

Construing Cohen's proposed fifth amended complaint broadly, his claim is not necessarily based on DHCFP treating him differently because of his disability but rather because DHCFP failed to accommodate him in denying him the tape recorder for meetings and failed to engage in the interactive process.  But even with the claim framed that way, Cohen must at least allege that he was fired for performance inadequacies caused by his disability and that the accommodations would have addressed those inadequacies. *Humphrey*, 239 F.3d at 1139-40. Cohen has not done so in his proposed fifth amended complaint.  That complaint, which includes an internal memorandum from his supervisor and the notes from his EEOC intake, explains he was fired for not completing jobs within his job scope and telling other staff how to handle their duties. ECF No. 28 at 19, 31.  Cohen has not alleged any facts that these were pretextual reasons nor has he alleged that the lack of a tape recorder is what caused these performance inadequacies.  Therefore, amendment with the fifth amended complaint for the Title I ADA claim would be futile.  However, if Cohen can remedy this pleading deficiency, and address the sovereign immunity issue, I grant him leave to amend this claim with a new complaint.

*ii.  Due Process/Equal Protection*

The Fourteenth Amendment prohibits the government from "depriving any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1.  The Fourteenth Amendment protects both procedural and substantive due process rights.  A procedural due process claim challenges the government for depriving someone of life, liberty, or property without implementing sufficient procedures, such as holding a hearing. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). To determine if additional procedures were necessary, courts must consider: "(1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the value of additional procedural safeguards; and (3) the government's interest, including the burdens of additional procedural requirements." *Shinault v. Hawks*, 782 F.3d 1053, 1057 (9th Cir. 2015) (citing *Mathews*, 424 U.S. at 335).

A substantive due process claim challenges the government for depriving a person of life, liberty, or property without an adequate reason. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 728 (1998).  The Fourteenth Amendment also provides individuals equal protection under the law by prohibiting the government from treating similarly situated individuals differently without adequate justification. *Brown v. Bd. of Ed. of Topeka*., 347 U.S. 483, 495 (1954).

For both substantive due process and equal protection claims, the government need only have a rational basis for its actions when the alleged conduct does not involve a fundamental right or a suspect class. *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).  Under the rational basis test, a government action is upheld if it is "rationally related to legitimate government interests." *Id*. at 728.  Individuals with disabilities are not part of a suspect class so the rational basis test applies. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 446 (1985).

It is unclear what Cohen's due process claim is based on.  Cohen generally references the Fourteenth Amendment in his fifth amended complaint and states that due process requires an opportunity to be heard. ECF No. 28 at 8.  This implies that it is a procedural due process claim but Cohen has not identified what government actions lacked sufficient procedures or what protected interest the government deprived him of.

Cohen also alleges that his "due process is affected" by Nevada Revised Statutes § 284.385(2), which creates a procedural distinction between permanent and probationary employees. *Id.* at 7.  He further alleges his due process rights are "affected" because § 284.385(4) prohibits employers from dismissing someone for their religion, race, sexual orientation, or gender but does not include disability. *Id.* at 7-8.  It is unclear what he means by "affected."  To the extent that Cohen is alleging that the Nevada statutes violate his substantive due process or equal protection rights, he has failed to allege any facts or make any arguments for why the distinctions fail to meet the low bar set by the rational basis test.  If Cohen seeks to amend this claim, he must clearly set out the legal basis for his due process and equal protection claim and identify facts that support it.

### iii.   Rehabilitation Act

The Rehabilitation Act of 1973 was passed to help individuals with disabilities "to maximize employment, economic self-sufficiency, independence, and inclusion and integration into society." 29 U.S.C. § 701(b).  Like the ADA, Section 504 of the Rehabilitation Act prohibits an individual from being discriminated against "solely by reason" of his disability "under any program or activity receiving federal financial assistance." *Id.* § 794(a).  Section 102 of the Rehabilitation Act sets out a system for providing vocational rehabilitation services to individuals with disabilities to assist them in securing, retaining, advancing, and regaining

employment. 29 U.S.C. § 722.  DETR is the entity responsible for this program in Nevada.  The Code of Federal Regulations related to Section 102 outlines the specific circumstances in which an individual's vocational rehabilitation services case can be closed. 34 C.F.R. § 361.56.

Although Cohen references the Rehabilitation Act throughout his complaint, it is unclear what provisions he bases his claim on.  He cites to 34 C.F.R. § 361.56, which suggests he is alleging that DETR violated that provision when it closed his case prematurely.  But he has not identified a private right of action for him to pursue it.  The Rehabilitation Act requires an individual to first challenge a vocational rehabilitation services case decision in a state administrative hearing before he can bring it to state court. 29 U.S.C. § 722(c)(5)(J).  There is no indication that Cohen has done this.  If this is the basis of his claim, he must state it clearly in his amended complaint and attach documentation showing that he challenged it through the proper channels.  To the extent he intended to allege a Section 504 violation, he has not sufficiently alleged facts to support it and has not identified the claim in a way that would give fair notice to the defendants.  Because it is not clear that amendment would be futile, I grant Cohen leave to amend this claim.

5.  Service of Process

If Cohen still intends to maintain claims against DHHS, he must properly serve it with process.  Rule 4 requires that service upon a state government must be made by "(A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Fed. R. Civ. P. 4(j)(2).  Nevada law requires service of process on the attorney general and the person serving in "the office of administrative head of the named agency." Nev. Rev. Stat. § 41.031(2).  Cohen has served the attorney general but has not served the head of

DHHS.  Instead, Cohen served the Las Vegas District Office of DHCFP.  Contrary to Cohen's arguments otherwise, the agency is DHHS, not DHCFP so the head of DHHS must be served. *See* Nev. Rev. Stat. § 232.300(2)(e), (3).  DHCFP is a division within DHHS. *Id.*

Cohen has been given multiple extensions to the proof of service deadline already and has been warned that failure to properly serve a party may result in dismissal under Rule 4(m). ECF Nos. 18 at 3-4; 25 at 5.  I will give Cohen one last chance to properly serve DHHS.  If Cohen fails to do so, I will dismiss DHHS from this action without prejudice.

### 6.   Conclusion

Because Cohen's proposed fifth amended complaint contains several deficiencies, proceeding with it as is would be futile.  But if Cohen can remedy the deficiencies I have identified, I grant him leave to amend his ADA, Rehabilitation Act, and due process/equal protection claims.  I caution Cohen that a failure to remedy these deficiencies may result in dismissal without leave to amend.  Cohen's new complaint should be titled "Fifth Amended Complaint."

### D.   Motion for Expedited Briefing and/or Trial Schedule (ECF No. 53)

Cohen moves for expedited briefing and trial schedule because he is concerned that Nevada's damages cap will limit his damages for this case.  He argues that the case is not complex and that most of the discoverable information has been exchanged.  The defendants respond that there is no reason to expedite, and that discovery has been stayed because of the pending motions.  They also argue that the damages cap does not apply to federal claims.

Because I grant the defendants' motion to strike the fourth amended complaint, Cohen has no operative complaint.  Additionally, the damages cap does not apply to federal claims. *Honghui Deng v. Nevada ex rel. Bd. of Regents for Nev. Sys. of Higher Educ.*, No. 2:17-cv-

03019-APG-VCF, 2020 WL 1470866, at *4 (D. Nev. Mar. 25, 2020).  Cohen cannot maintain his state law claims because of sovereign immunity so the cap is irrelevant as to them.  Seeing no basis to expedite the briefing or trial schedule, I deny Cohen's motion.

**E.      Report and Recommendation on Motion to Amend (ECF No. 60)**

Judge Youchah issued a report and recommendation on Cohen's motion for leave to amend with his proposed fifth amended complaint. ECF No. 60.  She recommended I deny leave to amend and that I treat the second amended complaint as the operative complaint.  Given my decisions in this order, her report and recommendation is moot.

**III.    CONCLUSION**

I THEREFORE ORDER that plaintiff Steven Cohen's motions for status check **(ECF Nos. 52, 54) are DENIED as moot.**

I FURTHER ORDER that the motion to dismiss or strike filed by defendants Department of Administration – Division of Human Resource Management and Department of Employment, Training and Rehabilitation – Bureau of Vocational Rehabilitation **(ECF No. 26) is GRANTED in part.**  I order the clerk of the court to strike ECF No. 19.

I FURTHER ORDER that defendant Department of Health and Human Services – Division of Health Care Financing and Policy's motion to dismiss **(ECF No. 42) is DENIED as moot.**

I FURTHER ORDER that plaintiff Steven Cohen's motion for leave to amend **(ECF No. 30) is DENIED.**

I FURTHER ORDER that plaintiff Steven Cohen may file a new amended complaint, titled "Fifth Amended Complaint."  If he fails to file an amended complaint by **May 21, 2021**,

this action will be dismissed with prejudice. This order gives Cohen leave to amend only the claims as set forth in this order and does not grant leave to add new claims.

I FURTHER ORDER that the deadline to properly serve defendant Department of Health and Human Services – Division of Health Care Financing and Policy is extended to **June 1, 2021**. If Cohen fails to properly serve that defendant by that deadline, I will dismiss the claims against it without prejudice.

I FURTHER ORDER that plaintiff Steven Cohen's motion for expedited briefing and/or trial schedule **(ECF No. 53) is DENIED.**

I FURTHER ORDER that Judge Youchah's report and recommendation on Steven Cohen's motion for leave to amend **(ECF No. 60) is moot.** There is no need to file an objection to that document.

DATED this 19th day of April, 2021.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE